# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **NANCY D'ANNA,** *et al.*, | }<br>}<br>} |
| Plaintiffs, | }<br>} |
| v. | Case No.: 2:19-cv-00391-MHH |
| **CAPSTONE MEDICAL RESOURCES, LLC,** *et al.*, | }<br>}<br>}<br>} |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

*Qui tam* relators Nancy D'Anna and Valerie Paige Zeiger sued Capstone Medical Resources, LLC and Sharon Waltz under the False Claims Act. (Doc. 1; Doc. 14). The relators have filed a motion for summary judgment. (Doc. 53). To resolve the motion, the Court outlines the governing standard of review, discusses the relevant evidence, and then applies the law regarding the FCA to that evidence.

### I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for

1

summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## II.

Dr. Sharon Waltz earned her doctorate in psychology in the early 2000s. (Doc. 52-5, p. 10, tp. 29). In 2012, she opened Capstone Medical Resources, LLC where she provided psychological evaluation services. (Doc. 52-5, pp. 14, 15, tpp. 47–50, 55). In 2014 or 2015, Capstone began offering therapeutic services as well, (Doc. 52-5, p. 16, tp. 56), and Capstone began billing Medicaid and other agencies for services that Dr. Waltz rendered. (Doc. 52-5, p. 17, tp. 60).

In their complaint, Ms. D'Anna and Ms. Zeiger allege that while they worked at Capstone, Dr. Waltz and Capstone submitted false claims to Medicaid in violation of Medicaid policy and the False Claims Act. (Doc. 1, pp. 5–15, ¶¶ 21–66). Months after the relators filed their complaint in this action under seal, the United States filed a criminal information against Dr. Waltz. (Doc. 52-2). The United States charged Dr. Waltz with conspiring to commit health care fraud in violation of 28 U.S.C. § 1349. (Doc. 52-2, pp. 9–14, ¶¶ 25–46). The United States asserted that between 2016 and 2018, Dr. Waltz submitted claims to Alabama Medicaid for services that Dr. Waltz did not provide. (Doc. 52-2, pp. 10, 11, 12, 13–14, ¶¶ 26, 28, 31, 33–34, 42). Dr. Waltz pleaded guilty to the charge in the criminal information, and the district judge who presided over the criminal case sentenced Dr. Waltz and entered a final judgment against her. (Doc. 52-4, p. 2).

In deposition testimony in this case, for herself and on behalf of Capstone, Dr. Waltz admitted certain fraudulent conduct. (Doc. 52-5, pp. 6, 71, tpp. 14, 275–77). For example, she admitted that Capstone Medical "knowingly presented or caused to be presented a false or fraudulent claim for payment or approval in the form of billings for reimbursement for services" rendered to Alabama Medicaid patients. (Doc. 52-5, p. 71). For herself and on behalf of Capstone, Dr. Waltz admitted that federal funds were used to reimburse Capstone Medical for those false or fraudulent claims for payment. (Doc. 52-5, p. 71). Finally, for herself and for Capstone, Dr. Waltz admitted that Capstone Medical "knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim" to obtain payments from Alabama Medicaid. (Doc. 52-5, p. 71).

## III.

The False Claims Act "imposes significant penalties on those who defraud the Government." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 180 (2016). The Act focuses "on those who present or directly induce the submission of false or fraudulent claims" to the federal government. *Universal Health Servs.*, 579 U.S. at 182. Medicaid is a "joint state-federal program" that provides reimbursement to healthcare providers who "serve poor or disabled patients." *Universal Health Servs.*, 579 U.S. at 183.

Dr. Waltz and Capstone argue that the False Claims Act's public disclosure bar precludes the relators' suit. (Doc. 56, pp. 14–16). The False Claims Act provides that, absent opposition from the United States, a district court must dismiss an FCA action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed–in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party . . . unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).[1] The public disclosure inquiry has three-parts: "'(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an "original source" of that information.'" *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021) (quotation omitted).

Dr. Waltz and Capstone contend that the relators are not the "original source" of the information the relators allege in their complaint. (Doc. 56, pp. 14–16). The record demonstrates that the relators filed their complaint in this action on March 5, 2019. The United States filed the criminal information against Dr. Waltz on August

---

[1] An earlier version of the FCA characterized the public disclosure bar in jurisdictional terms. *See United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 932 (11th Cir. 2016). More recently, Congress amended the False Claims Act to remove the "[n]o court shall have jurisdiction over an action" language and substitute language that requires district courts to "dismiss an action or claim" when the public disclosure bar applies. *See* 31 U.S.C. § 3730(e)(4)(A); *Saldivar*, 841 F.3d at 1353.

14, 2019, more than five months after the relators filed their complaint. (*See generally* Doc. 52-2). Dr. Waltz and Capstone have not offered evidence that contradicts this evidence that the relators were the original source of the relevant information. Therefore, Dr. Waltz and Capstone are not entitled to summary judgment based on the public disclosure bar.

Dr. Waltz and Capstone also argue that the Court cannot consider the arguments in the relators' summary judgment brief because the relators did not file a separate summary judgment motion. (Doc. 56, pp. 13–14). Dr. Waltz and Capstone argue that in the absence of a motion, they are prejudiced because they do not have sufficient notice of the basis for the summary judgment motion. (Doc. 56, p. 14).[2]

Rule 7(b) of the Federal Rules of Civil Procedure states in relevant part that a "request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." FED. R. CIV. P. 7(b)(1). Rule 1 of the Federal Rules of Civil Procedure directs district courts to construe, administer, and use the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. On the record in

---

[2] Dr. Waltz and Capstone suggest that the absence of a summary judgment motion may impact the Court's subject matter jurisdiction. They are mistaken. Because the relators assert a claim under a federal statute, 28 U.S.C. § 1331 supplies federal subject matter jurisdiction for this case.

this case, applying Rules 1 and 7(b)(1) together, the Court treats the relators' summary judgment brief as having an incorporated motion for summary judgment. The brief is in writing, provides detailed analysis of the grounds on which the relators seek summary judgment, and identifies the relief sought. (Doc. 53). The brief provides adequate notice of the evidence on which the relators rely and the legal arguments on which their motion rests. The Court notes that summary judgment motions frequently consist of no more than a handful of sentences in which a party asks a court to enter judgment in the party's favor pursuant to Rule 56. Parties typically discuss the summary judgment evidence and their legal arguments only in their briefs.

Even if the relators' brief could not serve as a proper motion for summary judgment, the Court entered a briefing schedule and gave Dr. Waltz and Capstone an opportunity to respond to the relators' summary judgment brief. (Doc. 56). Rule 56(f) allows district courts to "grant summary judgment for a nonmovant" after "giving notice and a reasonable time to respond." FED. R. CIV. P. 56(f)(2). With the briefing order, Dr. Waltz and Capstone had notice that the Court was willing to consider the relators' summary judgment arguments, and Dr. Waltz and Capstone had an opportunity to respond to those arguments. Therefore, the Court may grant summary judgment pursuant to Rule 56(f).

Turning to the relators' arguments, "[t]he FCA imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1309 (11th Cir. 2024) (internal quotation marks omitted); *see also* 31 U.S.C. § 3729(a)(1)(A)–(B).[3] "Both provisions share the same elements: 'the existence of a false claim or statement, the materiality of that false claim or statement, and scienter.'" *Gose*, 109 F.4th at 1309 (quotation omitted).

Citing *United States v. Killough*, 848 F.2d 1523 (11th Cir. 1988), the relators argue that Dr. Waltz's guilty plea in her criminal proceeding conclusively establishes the elements of False Claims Act violations against her in this civil action. (Doc. 53, pp. 15–17, 19–20; Doc. 57, pp. 7–9). In *Killough*, the Eleventh Circuit noted that "[w]hen an issue is resolved in favor of the United States in a criminal prosecution, that issue may not be contested by the same defendant in a subsequent civil suit brought by the government." *Killough*, 848 F.2d at 1528 (citation omitted). "This rule applies in all civil cases brought by the United States where a defendant previously has been found guilty, either by a jury verdict or by a guilty plea." *Killough*, 848 F.2d at 1528 (citations omitted); *see also Sell v. United States*, 336

---

[3] The relators allege that the defendants submitted false claims and included in the false claims false records material to the false claims. (Doc. 1, pp. 13–15, ¶¶ 60–66).

8

F.2d 467, 474–75 (10th Cir. 1964) (concluding that in a False Claims action, "[t]he findings in the criminal case . . . were admissible in the civil case . . . under the doctrine of res judicata or estoppel by judgment, insofar as such findings determined issues identical to both cases").

Statutorily, the False Claims Act prevents Dr. Waltz from denying the fraudulent conduct the relators allege in this case. Section 3731(e) provides:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e); *see also United States v. Anghaie*, 633 Fed. Appx. 514, 516 (11th Cir. 2015) (concluding that the defendants were "estopped from denying either that they conspired to defraud the government or that they knowingly made false claims" in civil case after conviction for "conspiring to defraud the government").

Here, the United States filed a criminal information against Dr. Waltz in which the government alleged that Dr. Waltz conspired to commit health care fraud in violation of 18 U.S.C. § 1349. (Doc. 52-2). The criminal information involved the transactions at issue in this case. (*Compare* Doc. 52-2, pp. 11–14, ¶¶ 28, 31, 33–34, 39–42, *with* Doc. 1, pp. 5–12, ¶¶ 21–59). Dr. Waltz pleaded guilty to the criminal information, and the district court entered a criminal judgment against Dr. Waltz.

(Doc. 52-4). Therefore, by statute, Dr. Waltz is estopped "from denying the essential elements" of her fraudulent conduct in this action. *See* 31 U.S.C. § 3731(e).[4] Because the United States named only Dr. Waltz as a party to the criminal information, the estoppel applies only to her, not to Capstone.

Citing her deposition testimony in this case, Dr. Waltz contends that she did not have the requisite intent under the False Claims Act. (Doc. 56, p. 17–18). During her deposition, Dr. Waltz admitted to violations of the False Claims Act, (Doc. 52-5, p. 71, tpp. 275–76), but she testified that she did not knowingly present false claims for payment, (Doc. 52-5, pp. 77–78, tpp. 298–301). Dr. Waltz has not cited law that enables her to use her deposition testimony in this case to overcome the preclusive effect of the criminal judgment against her. *See* 31 U.S.C. § 3731(e). Under § 3731(e), Dr. Waltz's intent is established as a matter of law.

In her deposition, for herself and as Capstone's corporate representative, Dr. Waltz admitted that Capstone knowingly submitted false claims to Alabama Medicaid and that Capstone received federal funds in payment of those false claims. (Doc. 52-5, pp. 6, 71, tpp. 14, 274–75). Dr. Waltz's deposition testimony as Capstone's corporate representative establishes Capstone's intentional conduct.

---

[4] Dr. Waltz did not appeal from the judgment in her criminal case, and she did not file a motion under 28 U.S.C. § 2255 to challenge the judgment. *See* Docket Sheet, *Waltz*, 2:19-cr-00425-RDP-GMB. Dr. Waltz filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the calculation of the time she served on her criminal sentence. She did not include in that petition a challenge to her conviction. *See* Petition, *Waltz v. Bureau of Prisons*, No. 2:23-cv-00356-MHH-GMB (N.D. Ala. Mar. 20, 2023), Doc. 1.

Because the undisputed evidence in this case establishes that Dr. Waltz and Capstone knowingly presented or caused to be presented false and fraudulent claims for payment to Alabama Medicaid and that Capstone and Dr. Waltz received federal funds in payment for the false claims, no genuine issue of material fact exists for a jury to resolve as to the relators' claim in this FCA action.

**IV.**

Accordingly, the Court grants the relators' motion for summary judgment as to the defendants' liability under the False Claims Act. On or before March 20, 2025, the relators may submit information regarding the issue of damages. Dr. Waltz and Capstone may respond by March 29, 2025. The Clerk shall please TERM Doc. 53.

**DONE** and **ORDERED** this March 17, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE